16-50892 Certain Underwriters at Lloyds of London v. Sterling Custom Homes Is the appellant ready to proceed? Yes, Your Honor. You may. May it please the Court. My name is Chad Gant. I represent Sterling Custom Homes in this insurance coverage dispute. And while it may seem like sort of an arcane exclusion we're arguing over, the impact of the Court's decision here could have a really significant effect on how commercial general liability policies apply in the construction context. There are two issues really before the Court. One is, was Sterling an additional insured for purposes of the state court action for which it sought recovery from Espinoza? The second is, does the cross-suit exclusion apply to additional insureds? I would submit, Your Honors, that the cross-suit exclusion, as has been found in another Texas case, should not apply to additional insureds at all. But if it does, it wouldn't apply in this scenario because under these facts, Sterling was not an additional insured. And I think it's important to remember that this isn't an analysis that Lloyds is trying to expand coverage to find that Sterling is an additional insured for its benefit. They're actually trying to expand the additional insured definition or expand its application so that they can back through an exclusion and include coverage to their insured, Espinoza. So in this setting, Sterling was the general contractor retained to build a large custom home. Sterling hired Espinoza as its painting subcontractor. And part of the subcontract requirement was that Espinoza purchase a commercial general liability insurance policy and name Sterling as an additional insured. Espinoza did that, bought a policy from Lloyds and named Sterling as an additional insured. The additional insured endorsement, which is part of our record, was submitted, and it states on it that it's an additional insured endorsement, and it's a blanket additional insured, and it says who is an insured in Section 2 is amended to include as an insured the person or organization shown in the schedule. And this is the key critical part. It says but only with respect to liability arising out of your ongoing operations performed for that insured. And your, in this case, is Espinoza. Parties don't disagree about that. So it's very important that that but only for liability arising out of your ongoing operations be the focus of this analysis. Because in this case, in the underlying case, what happened was it was alleged that Espinoza, by the way he was storing oil-soaked rags, burned down this house, about $1.3 million in damage. And the manner in which these rags were being stored was negligent. And there's actually a judgment now for $1.3 million in change. So the general contractor brought claim against Espinoza to recover. Your Honors, this is a claim that is routinely covered by a comprehensive general liability policy. This claim by the contractor against the subcontractor for negligence, routinely covered. And, in fact, when the claim was first asserted. Was that coverage acknowledged below before Judge Sparks by opposing counsel? It was initially, I think, Your Honor, because when they first filed their action for declaratory judgment, they weren't seeking to enforce an exclusion to preclude coverage. The only issue in the first original filing of the DEC action was, was there a sublimate that applies to this claim? And did we have $1 million in coverage or did we have $100,000 in coverage? And then they amended the first time, and they added two exclusions, one of which was not this cross-suits exclusion. They added an oral contracts exclusion and one other. Then they — I'm sorry. No. Your analysis is helpful. Keep going. Okay. And so then they file a summary judgment. And in the summary judgment, they sought a declaration that the $100,000 limit applies. But they also sought a declaration that six different exclusions also precluded coverage in its entirety, four of which were not pled. And one of those was the cross-suits exclusion. And it was only after the summary judgment was filed and briefed that they moved for leave to add this cross-suits exclusion. So — But once you get to the hearing, at that point, did you say in answer to question two, even if we just look at the cross-suits exclusion, it's ambiguous, the 11th Circuit Twin City route? Was that raised below? Your Honor, I don't — Or is it not significant? I don't know if it was raised below, particularly ambiguity. And I will acknowledge that it wasn't briefed because, quite frankly, it wasn't pled. It was only — the only briefing was that it's not pled. And then we have briefed the ambiguity issue. But, quite frankly, Your Honor, I don't think you have to find the cross-suits exclusion ambiguous to find that it doesn't apply, because it states it only applies to suits by one insured against another insured. And there have been courts in Texas that have held that an additional insured is not — this cross-suits exclusion does not apply to an additional insured. And it's a really — What's the best case that even when the language says any insured, it wouldn't be for purposes of a cross-suit exclusion? The best case that we cited — I believe it's the only case that we found, Your Honor, was Northfield Insurance Company. It's cited on page 31 of our brief. And it's 2003 — and I have Lexis also. Sorry. No, that's okay. If it's in your brief — 2003, U.S. District, Lexis, 29031. And if I could just expand on that — Yeah. And this is what I think is so important. If the cross-suits exclusion applies to additional insureds, then no general contractor's claim would ever be covered for anything against a subcontractor, because general contractors are routinely named as additional insureds. In fact, on this additional insured endorsement, it says additional insureds, owners, lessees, or contractors. Do we know if Sterling approved this particular insurance contract? Your Honor, that's not in the record. I would say that it would be highly unusual for them to. But I will also say that this is an ISO form, this additional insured endorsement. It's a typical form. So it only vests insured status on additional insured when a claim is being sought against the additional insured. For example, you hire a subcontractor. They burn down a house. The homeowner sues you. You get to make a claim against the additional insured. And you also get to be insured by that policy. Then they make a third-party demand back, and it's covered by Lloyds. That's correct. But the argument that Sparks accepted was just a plain language one, which was Sterling should have looked at the actual policy, because had they looked, they would have seen it isn't just limited to their liability. Right? The exact language with them being an insured means they just can't sue. Well, but I don't. You'd say they aren't suing. I don't believe that they actually would constitute or they would qualify as an additional insured in this scenario, because they weren't being sued. Right. No claim was being made. Does that mean you're inserting the word Sterling, as Judge Sparks said? Or does that mean you're interpreting the word liability? No, I think I — Liability has to contemplate liability to somebody else, and there is no somebody else here? That's exactly right, Your Honor. Not only that, but it would make no sense at all to read — with all due respect to Judge Sparks, it would make no sense to read it the way — I know he says — he repeatedly acknowledges there's this near absurdity. Right. But he just says the contract to your language — But, see, I don't agree with his interpretation. And you don't because you say the word liability requires — It can only refer to the insured, because you don't need insurance if you're not liable. Yes. And the best case that makes that obvious point is — Well, Judge, there's not a case that makes that point, because I think it's so obvious. I mean, I really honestly believe this has never been an issue. I mean, we have cited a lot of cases that stand for the proposition that this additional insured — the inquiry is always, does the liability arise out of the additional insured's work? Not, is the additional — is the general contractor qualified as an additional insured because of the allegations or the complaint? These cross-claim suits are — that expression, and it's not a field in industry I know, but there are other terms, insured versus insured. And once one looks at other terms, it — I was shown a Fifth Circuit case called Kinsale two years ago. Does that ring a bell, interpreting an insured versus insured clause, finding it? Go ahead. If that's the case I'm thinking of, Your Honor, that was a different scenario. Uh-huh. And I believe that's cited by Peli in their brief, because in that case, the — both the general contractor and the subcontractor were named insured. They were. Right. And that's a completely different scenario. It is, but the Court still found the clause inapplicable. Gosh, I don't remember that, Your Honor. All right. I'm sorry. I thought they found — I didn't think they found it inapplicable because of the fact that they were named as — as named insured. It didn't apply to the indemnity clause. The effort to seek recovery wasn't a property damage claim. But anyway, it doesn't matter. If they cited it, they may have. I'm sorry. But, yeah, I mean — but I've never seen a case that applies it like this. There was a recent Texas Supreme Court case, and I think it nails it. It says the manifest purpose of an additional insured clause is to provide supplemental protection when the additional insured may be sued. When the additional insured may be sued for conduct within the named insured's scope of risk. That's what additional insured — What case is that? That's the NRA Deepwater Horizon case, Your Honor. We cited it in our brief. It's a Texas 2015 claim. That's what this additional insured clause is for. But think about this, too. If Lloyd's interpretation was correct, if a homeowner brought a claim against a subcontractor for damaging them, that claim is derivative through the general contractor, because the homeowner doesn't have an agreement with the subcontractor. So not only would the general's claims be barred, but in this case, we're a subrogee, right? Great American is subrogating through Sterling, and they're claiming that because our claim is derivative, it's barred by this cross-suits exclusion. The homeowner's claim against the subcontractor, which is derivative in nature, would also be barred. Essentially, if this interpretation is adopted, then subcontractors have no coverage for liability under a commercial general liability policy. So in this instance, there was — Sterling filed suit against Espinoza. There were no claims against Sterling. There was no allegation of liability. There was no argument that Sterling was responsible for damages. There was no reason and no impetus for Sterling to seek protection as an additional insured, because nobody's seeking liability from him. But what they've done is they've managed to try and twist the additional insured provision to say, well, since it doesn't say it has to be Sterling's liability, it could be Espinoza's liability. So what they're saying is if — Sterling's an additional insured if somebody's seeking liability against Espinoza. But that doesn't make any sense, because Sterling doesn't need insurance protection. They don't need a defense. They don't need an indemnity unless somebody's making a claim against them, which in this case, it's undisputed, did not happen. So I think that this interpretation that Judge Sparks sort of seized on and that Boyds is asking this Court to adopt would be — would gut — it would gut the commercial general liability policy and the protections it provides to its insureds who are subcontractors. It would eliminate coverage for general contractor claims against subcontractors, which are always covered. I mean, general contractors — one of the reasons a general contractor requires a subcontractor to purchase a policy is so that they're protected in case the subcontractor negligently causes damage. That's an assurance and that's a protection to the general. They get two protections. One, they're additional insureds in case they get sued for vicarious liability. But two, they're protected in case the subcontractor damages them. This would eliminate — I'm sorry, the interpretation by Boyds would eliminate almost both of those protections. I mean, it would still — they would still be protected if they were sued for vicarious liability. But if they brought — What's — under your interpretation, what's Lloyds getting out of the cross-claim exclusion? Well, in this particular instance — oh, well, I mean, what it does is it essentially keeps a third-party liability policy from becoming a first-party liability policy. Think about it this way. When you've got named insured provisions, it says you are the named insured. Your officers, directors, employees are all named insured as well. So let's say the general contractor's employees or the general contractor was building a house, he burns it down. Well, a director of the company could sue the general contractor of the company and allege that the general contractor was negligent, and therefore the directors have been damaged, and they would be covered. It would almost be like a first-party liability — or a first-party policy. So the cross-suits exclusion just prevents that. It keeps one insured from suing another insured and transforming a third-party policy into a first-party policy. So — and then just very, very briefly, the court raised a question about jurisdiction, and I believe that those issues have been briefed well, but we have an interrogatory answer, an interrogatory answer from Sterling that specifically states that the underwriter on this policy is a Texas company. Now, they've provided other documents, and they've given declarations from people who we've never even heard of, we don't know them, they've never been identified before, that say, well, they're not, they're an English underwriter. But the interrogatory answer says that they're a Texas underwriter. And if they're a Texas underwriter, there's no subject matter jurisdiction, and this matter should be dismissed. And it's not like we found this interrogatory answer laying on the ground. It was filed by counsel for Lloyds in this proceeding, and it's signed by counsel for Lloyds, stating that the underwriter is a Texas entity. That's all I have. I have three seconds left, so I appreciate it, Your Honor. Thank you, counsel. You may proceed. May it please the court. Counsel, my name is Jerry Kimmett, and along with Mark Kuttner, we represent the appellees, certain underwriters at Lloyds. There are two issues we really want to talk about today, as well as address any questions that the court may have. First, the district court was correct in applying Texas law and determining that the plain meaning of the additional insured wording and the plain meaning of the cross-suits provision both applied to bar coverage to both defendants, both Mr. Espinoza, the named insured, and the additional insured, Sterling Custom Homes. The second point we want to raise is the final and non-appealable judgment of no binding upon Sterling Homes, and therefore, Sterling has no coverage under the policy. Now, what we're talking about here with respect to the first one, we all know that Texas law applies to this claim. Sterling got what it asked for. The court knows that we have to actually look at the underlying contract between Sterling and Espinoza to determine what was being sought by Sterling as the general contractor for Espinoza, who is a sole proprietorship. He's a painter. Works out of his house. One entire page of that contract has terms and conditions relating to insurance that Mr. Espinoza was mandated and required to get. Interestingly enough, there's about 10 to 15 different terms in that clause. You cannot get a claims-made policy. You have to get an occurrence-based policy. It has limits. It says you have to have waiver of subrogation. It has all these other conditions. It even says that in the event you don't get this coverage, in bold letters, we will get the coverage and charge you for it. Mr. Espinoza did exactly what the subcontract required of him. He went to his agent. He got the coverage they asked. He paid additional money for that coverage. And the coverage mandated that they be an additional insured. You cannot be an additional insured sometimes and not be an additional insured other times. You ask to be an additional insured, you're an additional insured. One of the things I wanted to point out as well in the subcontract agreement, which again was given to Mr. Espinoza, addendum C, which is page 784 of the record. Addendum C is essentially the additional insured wording that Sterling wanted Espinoza to put into the policy. Now, Mr. Gant just read the additional insured wording that is actually in the policy. This is from the subcontract that Sterling wanted to be put in. It wasn't put in, but it shows their intent. And it says, It is agreed that such insurance afforded by this policy shall also apply to the below listed additional insureds, which is Sterling, its agents, employees, and representatives. Here's the words. But only with respect to legal liability or claims caused by arising out of or resulting from the operations of the named insured. The reality is in the subcontract that is incorporated into our policy, the exact, almost verbatim wording that Sterling wanted is what's actually in the policy. And when you apply the plain meaning to both that wording and the actual wording that we have in the policy, it is clearer than additional insured. With respect to the cross-suits provision, again, I'd refer to a question that Judge Graves just asked in the preceding oral argument. The word any is crucial. The word any means all. Any insured. There are additional insured. Therefore, all insureds cannot file a claim or a suit against any other insured. It works vice versa as well. Espinoza cannot file a claim against Sterling, which would be covered. Any of the insureds cannot sue any of the insureds. That's just the way it is. The reality is the best case that applies a cross-suit exclusion to defeat an additional insured's suit against the named insureds for negligence of them. What's the best case? None in Texas. Okay. None in. What case anywhere? What we could give the Court is a law review article that lists a whole bunch of cases in a supplemental briefing and the arguments, and we could do that at the Court. Right. If there's no case anywhere, the only one I saw in your brief was you cited Cannotillo. Yeah. H-9. But that case, you agree, has nothing to do with a cross-claim suit. Correct. It's a question. Okay. But what it does say is you shouldn't interpret contract language to eviscerate the meaningfulness. And that gets into the difficulty of what's this coverage worth? If there's no case that's ever allowed the cross-claim suit to do what you're asking it to be done here. It just hasn't been raised, Your Honor. It's never been raised. Okay. There are no published opinions, as Mr. Gant also said, dealing with the cross-suit exclusion. But then you've got case law like Twin City. Well, again, that's not a Texas case applying Texas law. So what we're saying is you've got to apply Texas law to the cross-suit's provision. And the plain meaning is that any suit or any claim by any insured against any other insured is barred. But is the logic of Twin City wrong? I mean, I looked at it pretty exhaustively. It's been cited favorably immensely a great number of times. It's only had four negative citations. And those citations, even the negative citations, one after another, say you would never interpret a cross-claim suit to defeat a suit by the all-insured against the name-insured when neither of them being held liable by anything, which is the language here. I think it's wrong, Your Honor. You think it's wrong. And I will say why. Okay. Because here in this context, going back to what I just said relative to who has the power in the contract, I'm sure this Court has dealt with, like in a marine context, there are insurance policies and insurance provisions where someone says delete the as-owner provision of the contract, add this wording, delete this wording. The parties have the right to delete or buy back, for lack of a better term, the cross-suit's provision. We wouldn't be here today if Sterling had actually said the cross — we don't want that wording in our policy, or as you just said a little while ago, had they read the policy and determined that. But you cannot go forward. But what if they say we're not asking to rewrite anything? It isn't putting Sterling in front of liable. It's that no one's being held liable here. There is no third party suing either. Therefore, the all — the all-insured language isn't triggered. Actually, Espinoza was being sued, Your Honor. But you brought the declaratory action here. I'm sorry, Your Honor? Right. The action here is your effort. Correct. But the underlying lawsuit was Sterling v. Espinoza. Espinoza was sued by Sterling, and his liability and his employee's liability was contested because the claim was that they were the cause of the fire at the house. So his liability was at issue in the underlying State court action. That's — okay. I don't dispute that Sterling's liability was not at issue. I don't know whether — You're going to have a hard time seeing that Espinoza's liability is at issue for purposes of triggering the cross-claims here. It's any claim by one insured against any other insured. I know. That's the literal language. But you're — we're facing a lot of authority everywhere that implies you wouldn't interpret it that way. And you say there's a law review article that says you could. Yes, Your Honor. And we'd be happy to supplement that article with the court in a supplemental briefing. What coverage did Sterling get? Or did they just negotiate a very foolish policy? Sterling didn't negotiate the policy, Your Honor. They mandated that — that Espinoza — What coverage did they get? Exactly the coverage they asked for. Okay. Which was — In the — in the event — and I'm going to get to that. Yeah. In the event, for example, that this fire — let's say the fire spread to the next house, that neighbor sued Sterling. Whether that neighbor sued Espinoza or not is irrelevant. Right. But in the hypothetical that you're asking me, they would have coverage for the neighbor suing them for the fire because it arose out of — They could make a third-party demand back to Espinoza? I'm sorry? If the neighbor sues Sterling, can Sterling make a third-party demand to Espinoza covered by your client? Sterling could make a demand directly against my — my client as an additional insurance under the policy for that third-party liability claim made by the neighbor against them arising out of Espinoza's work. Whether or not Mr. Espinoza is a party to that action is irrelevant, because the arising out of wording would mean — arises out of Mr. Espinoza's work, and the liability is between a third party, the neighbor — You'd have to pay it. You would pay it. Yes. And you told Sparks you would. Yes. But if they make a third-party demand to Espinoza, then you say no? Correct. If there were cross-claims between the two of them in that same lawsuit, that same hypothetical, that would not be covered. The claim by the neighbor against them would be covered. They did, in fact, get what they bargained for and what they mandated that Mr. Espinoza get. So twins — back to you saying Twin Cities is wrong, why? You said — As to the cross-suits provision? Yeah. Because, again, the plain meaning of the wording, as Judge Sparks said, is we have to apply the plain meaning. That's not Texas-specific law. That's saying the Eleventh Circuit was wrong in its approach. You're not saying — It is. I believe it is Texas-specific. Yeah. Okay. So you're saying Twin City isn't wrong. Well, it is in Texas. I see. I'm sorry. I'm sorry, Your Honor. That's what I meant to say. Yeah. I was asking him about that Kinsale case, and I think I saw you nod that you may know the case, even though — It's an indemnity case, Your Honor. Okay. And the question in that case was whether or not indemnity was owed to the third And indemnity, by definition, would apply to the third party as opposed to the parties to the insurance contract or the subcontract. I don't know if that helped, but — No, that does help. And, therefore, cross-claims is inapplicable. Was I right? Yes. Because, again, it was an indemnity claim as opposed to an additional insurance claim. Moving on, one of the things I wanted to say about our second point is that the final and appealable — non-appealable judgment of non — of no coverage as to Espinoza cannot be challenged on appeal by anybody. Judgment was rendered as a result of — rendered, excuse me, as a result of a summary judgment against both Mr. Espinoza and Sterling. Sterling appealed. Mr. Espinoza did not. A finding of no coverage, no indemnity, no duty to defend was made against Mr. Espinoza, the named insured under the policy, and that was never appealed. And that can never be challenged by anybody on appeal. It is a final judgment. One of the cases I wanted to talk about was if, in fact, the Court were to agree with Sterling that they're not an additional insured, which we obviously disagree with. But if they're not an additional insured, then their status has to be that of a third party beneficiary. It's the only thing you can be. You're the additional insured or you're a third party beneficiary or you're a stranger to the contract and you have no rights. So if they're not an additional insured as they contend, they're a third party beneficiary. Mr. Espinoza has no rights to the policy that has been judicially determined. The third party beneficiary stands in the shoes of the named insured, can have no greater rights than Mr. Espinoza has to the policy. I would refer this Court to a couple of key points. One is the brief filed by Sterling itself in front of the court found that the cross suits provision applied and the additional insured provision applied, so the suit against, by Sterling against Espinoza was not an additional insured. Espinoza was not covered under the policy, even as to him. Because it's one suit, a suit filed by one against the other. So you have a first cross party exclusion and you won on that one and that's what it amounts to? Correct. And there were other grounds that the Court did not reach and it specifically stated that in the order. I would like to read from a brief filed by Sterling in the district court. The document is at the record number 1018. It is entitled Defendant Sterling Custom Homes Supplemental Brief Regarding Defendant Sterling Standing to Seek a Declaratory Judgment. And this kind of gets to a point that Mr. Gant made about how we didn't plead things and they weren't allowed to raise ambiguity. In fact, the court asked us to submit supplemental briefing, all the parties, and Sterling submitted multiple supplemental briefs. On page 1020, I'm going to read verbatim. Under Texas law, a declaratory judgment action brought by an insurer is binding upon a third party beneficiary to a liability insurance policy if properly joined as a party to such action. Sterling cites State Farm Fire and Casualty v. Fullerton, a decision of this court written by Judge Higginbotham. To go on, in Balog v. State Farm Lloyds, the Texas Court of Appeals held that, without regard to privity, the trial court's determination that the insurer had no duty to indemnify the insured, which is what happened here, was binding upon the injured party who had been joined as a party to the insurer's declaratory judgment action. Citing Balog v. State Farm Lloyds. The same document goes on to say, because third parties derive their rights, if any, to collect insurance proceeds directly from the rights of the insured, they are deemed to be in privity by virtue of their shared legal interest. Sterling, at the district court level, said that the decision and the final judgment against Mr. Espinoza is binding upon them as a third party beneficiary. That's very consistent with this Court's decision in State Farm Fire and Casualty v. Fullerton. In that case, Justice Higginbotham – I mean, Judge Higginbotham noted that the named insured, horrible facts, involved a murder. The named insured killed his wife and his stepdaughter, pled guilty. The heirs sued Mr. Fullerton in State Court for wrongful death. State Farm filed a deck action against Mr. Fullerton and the heirs. Mr. Fullerton, the named insured, was defaulted. The Court went on to note that the judgment was entered against Mr. Fullerton, and it was binding upon the heirs because they were in privity with him because their only standing is as a third party beneficiary to the insurance policy. We believe that the statements made by Sterling at the trial court level and the Fullerton case demonstrate that the final judgment as to Espinoza, which was never appealed, is binding upon the finding of no coverage and no duty to indemnify, is binding upon all other parties forever. So this argument was made to Judge Sparks, but yet no – he made no ruling as to this? No, we could not, Your Honor, because the judgment would, as to Mr. Espinoza, it's the same document. And obviously, it could have been appealed by Mr. Espinoza, so we could not have made that before the trial court. I hope I made sense with that. Yeah. I thought you were saying that they did present it to Judge Sparks. That was a supplemental brief that they filed after the oral argument on the cross motions for summary judgment. So you did or did not make the argument to Judge Sparks? You did or you did not make the argument to Judge Sparks? No, we made that argument here, Your Honor, that the – that Judge Sparks is – I know you're making it here. Did you make it to him below? No. That's my question. Yeah. I have a couple minutes left. I do not know if the Court wants me to address the diversity issue or not. I'd be happy to do so. Go ahead. There is – in my mind, there's absolutely no doubt that there is diversity. We answered the Court's question. We provided proof. What has to be understood here is terminology. Here, Lloyds delegates to AUI. With all respect, it took you a long time to get around to this. I thought Judge Zaney, who was sitting by designation of our Court, went through a long, detailed explanation of the basic Lloyds structure, which we're not strangers to. And your pleadings were all on the ballpark on this thing, and you kept changing and changing until you finally got up to here. And I just don't – I don't quite understand that. It's all so clear. As to diversity, it is clear, Your Honor. Well, it is now, but it sure hasn't been because you're keeping them ending. You're trying to get it straightened out, but it wasn't from the beginning. I'm just puzzled by that. The problem, Your Honor, is that the historical interpretation of a Lloyds plan isn't as accurate today and in the future as it was in the past. In this particular policy, there's only one syndicate. That really sounds like a lawyer argument. Well, I hope so. I've had to run that around a couple of times. Okay. I hope so. That's what they pay me for. But the reality is there's only one syndicate here, and there's only one corporation in that one syndicate. That's a fact. And therefore, the amount of controversy is met by that one underwriter because that's the only underwriter that is at issue here. AUI is what the policy refers to as a correspondent. And if you – if we want – All I'm suggesting, I think it appears to me that we have jurisdiction, I think is right. But that's only with these late-arriving kinds of documents. You've caused a lot of court time and a lot of law clerks scrambling to try to figure this thing out over a period of time only to come in and say, well, King's X really won the problem. And I just don't understand that. Well, I think the short answer is nobody contested it at the district court level, so it was never brought up. Well, I can't do that. But the original pleadings were not sufficient to begin with. I apologize for that, Your Honor. Well, I don't need to apologize. I'm just trying to understand what happened because – and I accept your explanation that it wasn't challenged, and I can see – I understand how it happened. I've been there, done that. But it did – it's a long road to nowhere. Okay. To your advantage at the end of the conclusion, I must say. It would come out all right, but it's a long way. Thank you. For the reasons noted, we ask that the district court be affirmed. Thank you, counsel. Lotto. Yes, Your Honor. Your Honors. Okay, so first we briefed this on page 26 and 27 of our brief. Texas law is very clear. A default – this was a default judgment against Espinoza. It was not a judgment after any type of disputed action. It was a default. And Texas law is very clear that a default judgment against one defendant does not affect the status, rights, or liability of a co-defendant. We cite numerous cases to that effect. This court has also held that an injured party has standing to challenge an insurer's claim that it owes no coverage to its insured and has no duty to defend. This isn't – even if there's a default, and there's numerous cases cited in our brief on page 26 and 27 to that effect, it's a non-issue, Your Honors. The fact that Mr. Espinoza was defaulted doesn't affect our ability to challenge whether or not the application of the cross-suits exclusion is appropriate. Not only that, but the default was entered on the first petition, the original petition – or complaint for declaratory judgment. And that original complaint only sought a declaration that this $100,000 sublimit applied. That was the petition – or the complaint that was defaulted on, not this third amended complaint that listed all of these different exclusions. The default is a non-issue. So I just heard that you're either an additional insured all the time or you're never an additional insured. But that's not what the policy says. The policy very clearly says you are an additional insured, but only with respect to liability arising out of the insured's – the named insured's ongoing transactions or ongoing operations. Think about that. If you're an additional insured always, then why does the general contractor even need to buy its own policy? It doesn't. Because if you're an additional insured always, then you are an insured for all intents and purposes under the policy. And that's not what the additional insured provision provides. We brief that extensively. The additional insured is an extremely limited grant of coverage for an extremely limited circumstance and situation, and it's when vicarious liability is sought against a general contractor for the actions of the insured subcontractor. And that is the only time when a general contractor is an additional insured under the CGL policy. And that just didn't happen here. It absolutely didn't happen here. There was never a claim made for vicarious or derivative liability against the general contractor for Mr. Espinoza's actions. It didn't happen. So the insured is absolutely not – I'm sorry, Sterling is absolutely not an additional insured for this situation where they're seeking recovery from Espinoza. Also, I heard that counsel said that, well, Espinoza should have negotiated the terms of his policy. I mean, the record is clear that Mr. Espinoza is a mom-and-pop painter in Austin. And the idea of Mr. Espinoza – and he was ordered to buy a commercial general liability policy, and he bought a commercial general liability policy. The fact that he's going to go negotiate the terms and conditions of the cross-suits exclusion with Lloyds of London is – I mean, with all due respect, it's just – it's outrageous. This is a commercial general liability policy. It's a standard form commercial general liability policy. It has a typical additional insured endorsement. It has a typical cross-suits exclusion that has been found to not preclude this type of claim. And I seriously – When you say that point, when you say found, what's – That's the case I cited earlier, Your Honor. Pardon me. Northfield? Yes, sir, I believe so. It's the – I'm sorry, Your Honor. Yes, it is. It's the Northfield Insurance Company v. Lexington. So – and then – So, again, this is also – Texas law requires that this court apply the plain meaning of the terms. It applies – I mean, it requires that this court construe the policy to give effect to everything. And one point I want to make, and this is super important, that contract that required Mr. Espinoza to purchase the policy, that's parole evidence. The contract has no bearing on the insurance policy. The contract doesn't alter the terms of the insurance policy, except that it names Sterling as a general contractor, as an additional insured. The – you can't contract between a general contractor and a subcontractor to change the coverages provided by a policy. So that also is a red herring. I'm out of time, Your Honors. Thank you. Could I ask one question? Please. I'm just looking at your table of authorities. In your brief, I don't see the Northfield case cited. Can you give the Lexis site or whatever? Yes, sir. I did. It's in the table. Page 31 of our brief. Oh, I'm looking at the appellee brief. Okay. That's fine. If it's there, great. No, it's probably not cited in there, Your Honor. Thank you. Thank you, counsel.